L. CHARLES WRIGHT, Retired Appellate Judge.
On April 13, 1988, Sheriff Don Harrell petitioned the Probate Court of Covington *318 County for involuntary commitment of appellant, Donald Caswell. The petition contained allegations that appellant “has threatened to kill two employees of Searcy Hospital; has verbally abused store owners and citizens on the street; and is creating situations where he or others may be harmed.” A guardian ad litem was appointed for appellant. Following a probable cause hearing and a final hearing, the lower court found appellant to be mentally ill and committed him to the State Department of Mental Health. Appellant’s guardian moved the lower court for a rehearing. A second hearing was held on May 13, 1988, wherein the lower court found the following:
“1. The Said Donald E. Caswell is mentally ill and poses a real and present threat of substantial harm to himself or to others.
“2. The said danger to himself or others has been evidenced by a recent overt act as follows: Walked into restricted area of a business and frightened employees and had to be coaxed to leave; made several long distance phone calls and threatened the life of an employee; and was a constant nuisance to some 14 or 15 separate businesses in the Coving-ton Mall.
“3. That there is treatment available for the illness diagnosed or that confinement is necessary for him and the community’s safety and well being.
“4. That commitment is the least restrictive alternative necessary and available for treatment of his illness.”
Appellant appeals the lower court’s final order.
The record reveals the following pertinent information:
On April 12, 1988, fourteen store owners in Covington Mall filed a petition with the Sheriff of Covington County, forbidding appellant from entering their respective premises. No store owner testified at the original hearing. On rehearing there was testimony that appellant was constantly in the stores, that he continually asked to use the phones, that he entered restricted areas, and that he asked to borrow money. There was no testimony that appellant exhibited any type of dangerous or threatening behavior.
Appellant was picked up by the sheriff on April 13,1988. The evidence concerning the happenings of April 13, 1988, are not clearly set out in the record. From what we are able to glean from the evidence, it appears that appellant was in need of a ride home. He approached a residence and asked to use the phone. The occupant of the residence did not let appellant enter, but instead dialed the police chief’s number and handed appellant the phone out the door. The police chief came to the residence, and appellant requested a ride home. The police chief refused appellant’s request and ordered him to leave the premises. The police chief told him if he did not leave then he would be arrested. Appellant took off running. The police chief contacted the sheriff and asked for assistance. There is evidence, although vague, that appellant then entered another residence, used the phone without permission, and demanded that a teenage boy take him home. Following this incident, the deputy sheriff approached appellant and found that he “was not acting ... himself.” Appellant was then physically restrained and taken to jail.
Sometime during April of 1988, the sheriff was informed that appellant telephoned Searcy Hospital and threatened two employees. No testimony was offered as to the date, nature, or substance of the telephone call.
Appellant lived with John Tyler, a man he referred to as “uncle.” Mr. Tyler worked and did not like to leave appellant in his home alone during the day because “he wasn’t able to keep house by himself.” When Mr. Tyler would leave to go to work in the morning, he would drop appellant off at “Piggly Wiggly” or “Super United Food.” Appellant would then meet him in the afternoon for a ride home. Mr. Tyler was unaware of appellant’s activities during the day. Mr. Tyler testified that appellant had never been hostile or violent to him or to anyone else.
Patrick Kleiss, unit director of South Center Mental Health, interviewed appellant on the day of the initial hearing and diagnosed him as having an antisocial per *319 sonality disorder. Mr. Kleiss testified that, at the time of the interview, appellant did not appear to be actively psychotic and did not show any dangerous symptoms. Prior to the second hearing, the lower court received a report from William Kringel, Ph.D., an employee of Searcy Hospital, in which appellant was further diagnosed as having a bipolar disorder, manic, with psychotic features and antisocial personality. In construing the report for the lower court, Mr. Kleiss stated that out-patient treatment would not be successful due to the lack of control over appellant. The least restrictive method of treatment recommended by Mr. Kleiss was an in-patient setting followed by vocational rehabilitation.
Concerning the findings of fact required for involuntary commitment, Ala.Code (1975) (1984 RepLVol.), § 22-52-10, provides the following:
“(a) If at the final hearing upon a petition seeking to commit a person to the custody of the state department of mental health or such other public facility as the court may order, the probate judge, on the basis of clear, unequivocal and convincing evidence, shall find:
“(1) That the person sought to be committed is mentally ill; and
“(2) That as a consequence of the mental illness the person poses a real and present threat of substantial harm to himself or to others; and
“(3) That the threat of substantial harm has been evidenced by a recent overt act; and
“(4) That treatment is available for the person’s mental illness or that confinement is necessary to prevent the person from causing substantial harm to himself or to others; and
“(5) That commitment is the least restrictive alternative necessary and available for treatment of the person’s mental illness;
then upon such findings, the probate judge shall enter an order setting forth his findings, granting the petition and ordering the person committed to the custody of the Alabama state department of mental health or to such other public facility as the court may order.
“(b) If any such element be unproved, the probate judge shall deny the petition and discharge the subject of the petition sine die.”
(Emphasis supplied).
Appellant argues that the petitioner failed to prove with clear, unequivocal, and convincing evidence that appellant posed a real and present threat of substantial harm to himself or others by a recent overt act.
The issue raised by appellant involves questions of fact. The lower court heard the testimony and tracked the requirements of § 22-52-10 verbatim in its final order. Ordinarily, we would not be authorized to disturb its factual findings unless it was clearly and palpably wrong. Here, however, we find the usual presumption of correctness fails to rescue the lower court’s order because the undisputed facts were insufficient to meet the “clear, unequivocal and convincing” standard mandated by § 22-52-10.
We have reviewed the record, and we find that there was no “clear, unequivocal and convincing” evidence presented to show that appellant posed a “real and present threat of substantial harm to himself or to others ... evidenced by a recent overt act.” Furthermore, we find that the evidence presented fails to even sustain the basic allegations of the petition. The acts alleged were simply not proven. The evidence is insufficient to meet the high burden of proof required in cases of this nature. Therefore, this case must be reversed.
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e) of the Code of Alabama of 1975, and this opinion is hereby adopted as that of the court.
REVERSED AND REMANDED.
All the Judges concur.